1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF NEVADA**

8

9  ROBIN R. McGINNESS,                         )
                                              )
10              Petitioner,                    )          3:04-cv-0666-KJD-VPC
                                              )
11  vs.                                        )
                                              )          **ORDER**
12  E.K. McDANIEL, *et al.*,                   )
                                              )
13              Respondents.                   )
                                              )
14  _____ )

15

16          This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, by

    Robin McGinness, a Nevada prisoner.  The action comes before the court with respect to its merits.
17
    The court will deny the petition.
18
    **I.  Facts and Procedural Background**
19
            The state charged the petitioner by indictment with murder with the use of a deadly
20
    weapon, first degree kidnaping with substantial bodily harm, and robbery with the use of a deadly
21
    weapon.  Exhibit 4.[1]  The victim was reported missing in March 1999.  Some of the victim's bones
22
    were found approximately eight months later in the desert near Mesquite, Nevada, but the remains
23
    were not identified as such until at least one year later.  The coroner determined that the victim was
24

25
    _____
26          [1]  The exhibits cited in this order in the form "Exhibit ___," are those filed by petitioner in
    support of his amended petition for writ of habeas corpus and are located in the record at docket # 22,
    23 and 24.

likely shot in the head and that the wound would have caused instantaneous death.  Exhibits 39-42.

Petitioner had purchased items from two different stores using the victim's credit cards, and had

purportedly borrowed money from the victim.  *Id.*

Prior to trial, petitioner moved to exclude evidence of latex gloves, cable ties, and

duct tape that were removed from his apartment.  Exhibit 19.  The trial court denied this motion.

Exhibit 22.  Petitioner also moved to discharge counsel and to dismiss the charges for failure to give

proper notice of the grand jury hearing.  Those motions were denied.  Exhibits 28, 31, 32 and 34.

A jury trial was held between November 26, 2001, and December 5, 2001.  Exhibits

39-43.  The jury convicted the petitioner of first degree murder with the use of a deadly weapon, first

degree kidnaping with the use of a deadly weapon and with substantial bodily harm, and robbery.

Exhibits 43 and 45.  The state district court sentenced petitioner as follows: count I, to life in prison

without the possibility of parole with an equal and consecutive sentence for the use of a deadly

weapon; count II, to life in prison without the possibility of parole, with an equal and consecutive

sentence for the use of a deadly weapon, to run consecutively to count I; and count III, to a maximum

of 156 months in prison, with parole eligibility in 35 months, to run concurrently to count I.  Exhibit

46.  A judgment of conviction was entered on February 1, 2002.  Exhibit 47.

Petitioner appealed, arguing (1) the trial court abused its discretion in denying his

pretrial habeas corpus petition as the state failed to present exculpatory evidence to the grand jury,

(2) the trial court abused its discretion in denying his habeas corpus petition as the evidence adduced

at the grand jury hearing was insufficient to show the crime of kidnaping occurred, (3) the trial court

erred in refusing to admit the statements of an absent witness, (4) the trial court erred in denying his

motion in limine to exclude evidence of latex gloves, cable ties, and duct tape, and (5) the trial court

erred in denying his motion to dismiss the charges on the grounds that the state failed to give proper

notice of the grand jury hearing.  Exhibits 48 and 51.  The Nevada Supreme Court affirmed

petitioner's convictions.  Exhibit 54.  Remittitur issued on July 3, 2003.  Exhibit 57.

On March 11, 2004, petitioner mailed his state habeas corpus petition, alleging ten

1   claims for relief.  Exhibit 59.  The state district court denied the petition, finding the allegations were

2   unsupported by the facts.  Exhibit 67.  On appeal the Nevada Supreme Court affirmed the district

3   court's denial of the petition.  Exhibit 70.  Remittitur issued on November 9, 2004.

4            The instant federal habeas action was initiated on November 11, 2004 (docket #1).

5   This court appointed counsel to represent petitioner (docket #5).  A first amended petition was filed

6   on November 30, 2005 (docket #21).  Respondents moved to dismiss the petition, alleging some of

7   petitioner's claims were unexhausted (docket #30).  This court granted the motion to dismiss in part,

8   finding ground one and a portion of ground five were unexhausted (docket #34).  Petitioner elected

9   to abandon the unexhausted grounds (docket #35 and 36).  Respondents have filed an answer and

10  petitioner has filed a reply to the answer (docket #42 and 47).

11  **III.  Federal Habeas Corpus Standards**

12           The Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal

13  standard for the Court's consideration of this habeas petition:

14           An application for a writ of habeas corpus on behalf of a person in
         custody pursuant to the judgment of a State court shall not be granted
15       with respect to any claim that was adjudicated on the merits in State court
         proceedings unless the adjudication of the claim --
16
         (1)   resulted in a decision that was contrary to, or involved an
17       unreasonable application of, clearly established Federal law, as
         determined by the Supreme Court of the United States; or
18
         (2)   resulted in a decision that was based on an unreasonable
19       determination of the facts in light of the evidence presented in the State
         court proceeding.
20

21  28 U.S.C. §2254(d).

22           The AEDPA "modified a federal habeas court's role in reviewing state prisoner

23  applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are

24  given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002).   A state

25  court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28

26  U.S.C. § 2254, "'if the state court applies a rule that contradicts the governing law set forth in [the

3

1   Supreme Court's] cases'" or "'if the state court confronts a set of facts that are materially

2   indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

3   different from [the Supreme Court's] precedent.'"  *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)

4   (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

5           A state court decision is an unreasonable application of clearly established Supreme

6   Court precedent "'if the state court identifies the correct governing legal principle from [the Supreme

7   Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'"

8   *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413).  The unreasonable application clause

9   "requires the state court decision to be more than incorrect or erroneous"; the state court's

10  application of clearly established law must be objectively unreasonable.  *Id*. (*quoting Williams*, 529

11  U.S. at 409).  *See also Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004).

12          In determining whether a state court decision is contrary to, or an unreasonable

13  application of, federal law, this Court looks to a state court's last reasoned decision.  *See Ylst v.

14  Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Plumlee v. Masto*, 512 F.3d 1204, 1209-10 (9th Cir.

15  2008) (en banc).

16          Moreover, "a determination of a factual issue made by a State court shall be presumed

17  to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness

18  by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

19  **IV.  Discussion**

20      **A.  Ground One**

21          Petitioner abandoned his first ground for relief.  Therefore, the court will not address

22  the merits of this claim.

23      **B.  Ground Two**

24          In his second claim for relief petitioner alleges that the trial court's refusal to grant

25  substitute counsel and failure to inquire into the conflict violated his Sixth and Fourteenth

26  Amendment rights.

1    To compel a criminal defendant to undergo trial with an attorney "with whom he has

2    become embroiled in irreconcilable conflict is to deprive...[a criminal defendant] of the effective

3    assistance of counsel." *Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (citing *Brown v.*

4    *Craven*, 424 F.2d 1166 (9th Cir. 1970)).  In some cases the summary denial of a criminal defendant's

5    motion for new counsel, without further inquiry into the grounds of the motion, violates the Sixth

6    Amendment.  *Id.*  Essentially, a state trial court "has no discretion to ignore an indigent defendant's

7    timely motion to relieve an appointed attorney."  *Id.*  "However, not every conflict or disagreement

8    between...[a] defendant and counsel implicates Sixth Amendment rights."  *Id.* at 1027 (citing *Morris*

9    *v. Slappy*, 481 U.S. 1, 13-14 (1983) (holding the Sixth Amendment does not guarantee a meaningful

10   relationship between a defendant and counsel)).

11   Petitioner filed a motion to dismiss counsel in the state court prior to trial.  Exhibit

12   32.  The motion alleged, without further discussion, that trial counsel had failed to personally

13   interview witnesses, discuss or investigate a defense, and failed to form a working relationship with

14   the petitioner.  *Id.*  The trial court denied the motion at a hearing.  Exhibit 34.  The trial judge stated

15   that he did not find there was a legal basis for the motion.  *Id.*  The Nevada Supreme Court affirmed

16   the district court's denial of the claim.  Exhibit 70 at 12-13.  The court determined that petitioner

17   "proffered nothing more than bare allegations...and failed to explain how he was prejudiced by his

18   counsel's alleged inadequacies."  *Id.* at 13.  The court found the district court did not err in refusing

19   to provide substitute trial counsel.  *Id.*

20   The Nevada Supreme Court's determination was not an objectively unreasonable

21   application of federal law as determined by the United States Supreme Court.  While a state court

22   has no discretion to ignore a motion to dismiss counsel, here the trial court did not ignore the motion.

23   The court denied the motion, finding no legal basis for it.  Moreover, while the district court did not

24   further inquire into the grounds of the motion, the Nevada Supreme Court's determination that this

25   was not in error is not objectively unreasonable.  The court found that the motion to dismiss counsel

26   was not supported by any factual allegations and thus the petitioner had not shown that counsel was

1  ineffective and new counsel was warranted.  The factual findings of the Nevada state courts are

2  presumed correct.  28 U.S.C. § 2254(e)(1).  There is no indication that the Nevada Supreme Court's

3  order on this claim was unreasonable.  The court will deny this claim.

4     **C. Ground Three**

5     In his third claim for relief petitioner alleges that his Fifth, Sixth, and Fourteenth

6  Amendment rights were violated because juror 166 was a biased juror and therefore his inclusion on

7  the jury resulted in an impartial jury.  Respondents argue that this claim was procedurally defaulted

8  in the state courts.

9     Generally, in order for a federal court to review a habeas corpus claim, the claim must

10 be both exhausted and not procedurally barred.  *Koerner v. Grigas,* 328 F.3d 1039, 1046 (9th Cir.

11 2003).  Procedural default refers to the situation where a petitioner in fact presented a claim to the

12 state courts but the state courts disposed of the claim on procedural grounds rather than denying the

13 claim on the merits.  A federal court will not review a claim for habeas corpus relief if the decision

14 of the state court regarding that claim rested on a state law ground that is independent of the federal

15 question and adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31

16 (1991).  The *Coleman* Court stated the effect of a procedural default as follows:

17     In all cases in which a state prisoner has defaulted his federal claims in
       state court pursuant to an independent and adequate state procedural rule,
18     federal habeas review of the claims is barred unless the prisoner can
       demonstrate cause for the default and actual prejudice as a result of the
19     alleged violation of federal law, or demonstrate that failure to consider
       the claims will result in a fundamental miscarriage of justice.
20

21 *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).  For the procedural

22 default doctrine to apply, "a state rule must be clear, consistently applied, and well-established at the

23 time of the petitioner's purported default."  *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994).  *See*

24 *also Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996).

25     To demonstrate cause for a procedural default, the petitioner must be able to "show

26 that some objective factor external to the defense impeded" his efforts to comply with the state

1  procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have

2  prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

3  With respect to the prejudice prong of cause and prejudice, the petitioner bears:

4
> The burden of showing not merely that the errors [complained of]
> constituted a possibility of prejudice, but that they worked to his actual

5
> and substantial disadvantage, infecting his entire [proceeding] with
> errors of constitutional dimension.

6

7  *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (quoting *United States v. Frady*, 456 U.S. 152,

8  170 (1982)). If the petitioner fails to show cause, the court need not consider whether the petitioner

9  suffered actual prejudice. *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Roberts v. Arave*, 847 F.2d

10  528, 530 n.3 (9th Cir. 1988).

11       The instant claim was procedurally defaulted in the state courts. The district court

12  denied the claim, stating that the issue of whether the jury was tainted should have been raised on

13  direct appeal. Exhibit 67. The court cited to NRS 34.810(1)(b)(2) (stating a court should dismiss a

14  habeas petition if the grounds could have been raised on direct appeal or in a prior petition). *Id.* The

15  Nevada Supreme Court affirmed the lower court's denial of this claim, stating that the issue was

16  waived as it should have been brought in the direct appeal. Exhibit 70.

17       The Ninth Circuit Court of Appeals has held that, at least in noncapital cases,

18  application of NRS 34.810 is an independent and adequate state ground. *See Vang v. Nevada*, 329

19  F.3d 1069, 1074 (9th Cir. 2003); *Bargas v. Burns*, 179 F.3d 1207 (9th Cir. 1999). This court finds

20  that the Nevada Supreme Court's holding that review of petitioner's claim of trial court error was

21  barred pursuant to NRS 34.810 is an adequate and independent ground. Petitioner's reply only

22  addresses the merits of the claim, and does not contain arguments relating to "cause" for the

23  procedural default, therefore the court will deny this claim.

24       **D. Ground Four**

25       Petitioner argues in his fourth claim that his conviction and sentence are invalid and

26  violate due process, equal protection, and the right to a fair trial because the premeditation and

7

1   deliberation and malice jury instructions improperly minimized the state's burden of proof.

2   Respondents argue that this claim was procedurally defaulted.

3        Respondents' arguments are correct, and the instant claim was procedurally defaulted

4   in the state court.  The district court denied the claim, stating the claim should have been raised on

5   direct appeal pursuant to NRS 34.810(1)(b)(2).  Exhibit 67.  The Nevada Supreme Court agreed, and

6   affirmed the denial of this claim, finding petitioner had waived the claim by failing to raise it on

7   direct appeal.  Exhibit 70.  As was noted above, the Ninth Circuit has found that the application of

8   NRS 34.810 is an independent and adequate state ground.  *See Vang v. Nevada*, 329 F.3d 1069, 1074

9   (9th Cir. 2003); *Bargas v. Burns*, 179 F.3d 1207 (9th Cir. 1999).  This court finds the Nevada

10  Supreme Court's determination that petitioner's claim was barred pursuant to NRS 34.810 is an

11  adequate and independent ground.  Petitioner's reply only discusses the merits of the claim and does

12  not suggest any arguments relating to cause for the procedural default.  The court will deny

13  petitioner's fourth ground for relief.

14      **E.  Ground Five**

15       Petitioner abandoned all of the allegations contained in this claim except for ground

16  5(b).  In this claim petitioner asserts that his Fifth, Sixth, and Fourteenth Amendment rights were

17  violated due to improper comments made by the prosecutor during closing arguments.  Respondents

18  contend that this claim was procedurally defaulted below.

19       The instant claim was procedurally defaulted in the state court.  Petitioner raised the

20  claim in his state habeas petition, and the district court denied the claim pursuant to NRS 34.810,

21  noting that it should have been raised on direct appeal.  Exhibit 67.  The Nevada Supreme Court

22  affirmed the lower court's denial of the claim, stating that petitioner had waived the claim when he

23  failed to raise it on direct appeal.  Exhibit 70.  This court will not review the instant claim, as the

24  application of NRS 34.810 has been found to be an independent and adequate state ground.  *Vang*,

25  329 F.3d at 1074; *Bargas*, 179 F.3d at 1207.  Petitioner's reply does not contain any meaningful

26  argument relating to cause for the procedural default.  The court will deny this ground for relief.

**F. Ground Six**

In his sixth claim petitioner argues that trial counsel was ineffective for: (a) failing to hire experts to testify for the defense; (b) failing to adequately question and challenge juror Hanley; (c) failing to investigate a receipt for the purchase of wire ties and painters gloves; (d) failing to adequately cross-examine witness Virginia Foley; (e) failing to investigate witness Scheiben; (f) failing to locate witness Mary Spratt; (g) failing to prepare petitioner to testify on his own behalf at trial; (h) failing to object to jury instructions; (I) failing to object to prosecutorial misconduct during closing arguments; and (j) failing to maintain a working relationship with petitioner which prevented counsel from adequately representing petitioner.

In order to prove ineffective assistance of counsel, petitioner must show (1) that counsel acted deficiently, in that his attorney made errors so serious that his actions were outside the scope of professionally competent assistance and (2) the deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,' . . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

**1. Failure to Hire An Expert to Testify on Behalf of the Defense**

In claim 6(a) petitioner contends that trial counsel was ineffective for failing to hire or investigate an expert that could examine the victim's remains and testify for the defense. Petitioner states that the coroner testified at trial that he believed the victim died of a gun shot wound, but stated on cross-examination that the wound could have been post mortem. Moreover, petitioner

1    states that the coroner also testified that he believed the victim suffered some type of blunt trauma

2    injury near the time of death.  Petitioner contends that this testimony lent credibility to the state's

3    speculations as to how the victim died.

4             The Nevada Supreme Court, in affirming the denial of this claim, stated that the

5    petitioner failed to explain what additional evidence an expert could have contributed that would

6    have been favorable to the defense.  Exhibit 70 at 2.  The Nevada Supreme Court's decision is not an

7    objectively unreasonable application of *Strickland*.  Petitioner failed to show that counsel acted

8    deficiently, as he did not argue in the state court what a defense expert would have testified to that

9    would change the outcome of the trial.   The court will deny this claim.

10                  **2. Failure to Adequately Question and Challenge Juror Hanley**

11            In claim 6(b) petitioner argues that trial counsel failed to adequately question and

12   challenge juror Hanley.  The relevant test to determine whether a juror is biased is "'whether the

13   juror[ ]...had such fixed opinions that [he] could not judge impartially the guilt of the defendant.'"

14   *United States v. Quintero-Barraza*, 78 F.3d 1344 (9th Cir. 1995) (quoting *Patton v. Yount*, 467 U.S.

15   1025, 1035 (1984)).  *See also Davis v. Woodford*, 384 F.3d 628, 643 (9th Cir. 2004).

16            At trial juror Hanley told the court that he might have difficulty being fair to a

17   criminal defendant.  Exhibit 36, T 66-67.  The trial judge told the juror:

18              Mr. Hanley, all we're asking is that you keep an open mind throughout the
                trial.  As you listen to testimony - as a judge quite often I hear testimony
19              and as I'm listening to it, it kind of tends to persuade me that, yeah, they
                might be a little correct.  But, then I'm waiting to hear the other side of it,
20              though, so I'm keeping an open mind there.  So, it's not that you aren't
                swayed a little bit, it's just that you're still willing to listen to the other
21              testimony and the other evidence, and consider that before you your final
                decision.  Can you do that?
22
                Prospective Juror Hanley: Yes, Your Honor, I can.
23
24   Exhibit 36, T 67-68.  Juror Hanley then told the court that he believed that a defendant should defend

     himself.  *Id.*   The state then asked the potential juror: "so if the Judge tells you that you don't have
25
     to provide any weight to that, whether or not he [the defendant] testifies or does not testify, would
26
     you, in fact, weigh it against Robin for not testifying?"  *Id.*  The potential juror told the court that he

1   would not weigh the defendant's choice to not testify against the defendant and that he would wait

2   until all the evidence was heard to make a determination. *Id.*

3            The Nevada Supreme Court affirmed the denial of this claim, stating that the

4   petitioner had failed to show that juror Hanley was biased. Exhibit 70 at 3. Moreover, the court

5   found that petitioner failed to establish that counsel was ineffective. *Id.* The Nevada Supreme

6   Court's determination that the juror was not biased is not an unreasonable application of *Quintero-*

7   *Barraza* and *Patton*.

8            Furthermore, the state court's factual determination cannot be overturned unless this

9   court cannot "reasonably conclude that the finding is supported by the record." *Cook v. Schriro*, 516

10  U.S. 802, 816 (9th Cir. 2008); *Miller-El v. Cockrell*, 537 U.S. 32 (2003). The factual findings of the

11  Nevada state courts are presumed correct. 28 U.S.C. § 2254(e)(1). There is no indication that the

12  Nevada Supreme Court's order on this claim was unreasonable in light of the evidence presented in

13  the state court. The court will deny the instant claim.

14                    **3. Failure to Investigate a Receipt for Purchase of Wire Ties and Gloves**

15           In claim 6(c) petitioner asserts that trial counsel was ineffective for failing to

16  investigate the receipt for the purchase of wire ties and plastic gloves. In this court petitioner argues

17  that had counsel located the receipts, petitioner could have proved that the items were purchased

18  after the victim's disappearance.

19           Petitioner's claim in his state habeas corpus petition merely stated that trial counsel

20  failed to pursue cash receipts of wire ties and gloves. Exhibit 59. The Nevada Supreme Court

21  affirmed the lower court's denial of this claim, stating that the petitioner had failed to explain the

22  relevance of the information and how it would impact the defense. Exhibit 70 at 9. The Nevada

23  Supreme Court's order was not an objectively unreasonable application of *Strickland*. Petitioner did

24  not show how trial counsel's failure to investigate cash receipts prejudiced the outcome of his trial.

25  The court will deny this claim.

26                    **4. Failure to Adequately Cross-Examine Witness Virginia Foley**

1    In ground 6(d) petitioner alleges that trial counsel was ineffective for failing to

2    adequately cross-examine witness Virginia Foley.  Petitioner contends that counsel should have

3    asked witness Foley about whether the victim had left a note for petitioner asking petitioner to call

4    him as he needed petitioner's help.  Petitioner argues in the instant petition that this testimony would

5    have shown that he had no animosity toward the victim.

6    The Nevada Supreme Court determined that trial counsel properly cross-examined

7    witness Foley.  Exhibit 70 at 5.  Moreover, the court stated that petitioner did not show how

8    counsel's failure to ask the witness about the victim's note prejudiced the outcome of trial.  *Id.*  at 5.

9    The factual findings of the Nevada state courts are presumed correct.  28 U.S.C. § 2254(e)(1).

10   Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's decision was

11   contrary to, or involved an unreasonable application of, clearly established federal law, or that it was

12   based on an unreasonable determination of the facts in light of the evidence presented in the state

13   court proceeding.

14   Petitioner did not argue in his state habeas petition that had counsel properly cross-

15   examined witness Foley that the jury would have heard testimony that the victim needed petitioner's

16   help and there was no animosity between the two.  Moreover, even if petitioner had argued this

17   below, trial counsel did ask the witness on cross-examination if it was true that she told the police

18   officers that she did not think the victim had "problems" with any person.  Exhibit 42, T 48.  Witness

19   Foley stated that she did not know if the victim had problems with anyone, and thought he did not

20   have problems with the petitioner.  *Id.*  Therefore it appears the Nevada Supreme Court did not

21   unreasonably apply *Strickland*, as counsel's alleged failure to ask the witness about the note the

22   victim wrote likely did not prejudice the outcome of the trial, as the jury heard testimony that the

23   victim did not have "problems" with the petitioner.  The court will deny this claim.

### 5. Failure to Investigate Witness Scheiben

25   In claim 6(e) petitioner argues that trial counsel was ineffective for failing to

26   investigate witness Erik Scheiben, obtain his voluntary statements, work record, criminal record, and

1    the statement made by Scheiben's mother that would refute Scheiben's trial testimony that he took

2    care of his brother.

3            The Nevada Supreme Court affirmed the denial of this claim, stating:

4            McGinness did not explain how the introduction of Scheiben's taped
             statement would have assisted the defense.  Similarly, he did not explain
5            the purpose or relevance of Scheiben's work record.  Furthermore, the
             admissibility of Scheiben's criminal record, if any, is questionable. [fn 12:
6            *See* NRS 50.095; NRS 50.085; *Patterson v. State*, 111 Nev. 1525, 1534,
             907 P.2d 984, 990 (1995); *Givens v. State*, 99 Nev. 50, 52-53, 657 P.2d 97,
7            98-99 (1983), *overruled on other grounds by Talancon v. State*, 102 Nev.
             294, 301 n.3, 721 P.2d 764, 768 n. 3 (1986).] Finally, McGinness
8            apparently desired his counsel to challenge Scheiben's testimony during
             cross-examination that he took care of his handicapped brother with
9            testimony from Scheiben's mother to the contrary.  Such testimony,
             assuming it could be produced, would be inadmissible. [fn 13: *See* NRS
10           50.085; *Collman v. State*, 116 Nev. 687, 703, 7 P.3d 426, 436 (2000)
             (stating that impeachment of a witness on a collateral matter is not
11           allowed).]  Accordingly, we conclude that McGinness' counsel was not
             ineffective in this regard.

12
     Exhibit 70 at 5-6.  Petitioner now argues in this court that counsel could have investigated the above
13
     information in order to impeach Scheiben.  Scheiben testified that firearms were stolen from his
14
     residence.  One of those firearms was found in petitioner's residence, and another was suspected to
15
     be the murder weapon.  Petitioner contends that the state's case was entirely circumstantial, and a
16
     major part of the state's case depended upon Scheiben's credibility.  Petitioner asserts that had
17
     counsel investigated there is a reasonable likelihood that the outcome of the trial would have been
18
     different.
19
             The Nevada Supreme Court's determination was not an objectively unreasonable
20
     application of *Strickland*.  Petitioner did not show, in his state petition, how counsel's failure to
21
     investigate witness Scheiben prejudiced the outcome of trial, or why any of the information would
22
     have helped his defense.  Moreover, federal habeas corpus relief does not lie for errors of state law.
23
     *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).  To the extent
24
     petitioner is challenging the Nevada Supreme Court's determination that certain testimony would not
25
     have been admissible at trial, petitioner's claim also fails.
26
             The court will deny the instant claim.

                                                    13

### 6. Failure to Locate Witness Mary Spratt

In claim 6(f) petitioner alleges that trial counsel was ineffective for failing to locate witness Mary Spratt, who could have provided a possible alibi for petitioner.  Petitioner states that Spratt would have told the jury that he was in Las Vegas on the day of the victim's disappearance.

The Nevada Supreme Court determined that this claim was without merit.  Exhibit 70.  The court stated that "as there was no definitive evidence regarding the date or time of Doepke's [the victim] death, Spratt's ability to provide McGinness an alibi was dubious at best."  *Id.* at 6.  The court also noted that petitioner failed to "articulate what additional means he desired his counsel to undertake to locate Spratt."  *Id.*  The court concluded that counsel's failure to locate the witness did not prejudice the outcome of the trial.  *Id.*  Moreover, the court stated that counsel was not ineffective for failing to locate the witness.  *Id.*

The state court's affirmance of the denial of this claim was not objectively unreasonable.  While the victim went missing on March 21, 1999, it was and is not known when the victim actually died.  Therefore the Nevada Supreme Court's conclusion that there was no prejudice was not unreasonable.  Even if witness Spratt had testified that she saw petitioner on March 21, 1999, the last date the victim was seen, the testimony would not prove that petitioner did not commit the crimes.  Moreover, at trial, defense counsel told the court that he had attempted to locate witness Spratt, but he and his investigator could not find her.  Exhibit 40 at 2.

Finally, even if trial counsel had not diligently attempted to locate witness Spratt, Spratt's mother, Lora Quartuccio, did testify on petitioner's behalf.  Exhibit 41.  Quartuccio told the jury that petitioner came by her house on March 21, 1999, between 9:00am and noon.  *Id.*  Moreover, Quartuccio stated that she saw petitioner the following two days.  *Id.*  Therefore, the jury did hear evidence that petitioner was in Las Vegas on the day the victim disappeared.  Petitioner has not shown that counsel was ineffective when counsel attempted to locate the witness but was unsuccessful.  Furthermore, petitioner cannot show how the failure to locate witness Spratt prejudiced the outcome of the trial.

The court will deny this claim.

### 7.  Failure to Prepare Petitioner to Testify at Trial

In ground 6(g) petitioner alleges that trial counsel was ineffective for failing to prepare him to testify on his own behalf at trial.  On the last day of trial, the district court advised petitioner of his right to testify.  Exhibit 41.  Petitioner did not testify at trial.

The Nevada Supreme Court affirmed the denial of this claim, stating that petitioner chose not to testify at trial.  Exhibit 70 at 7.  Moreover, the court noted that petitioner failed to elaborate what additional preparation trial counsel should have undertaken.  *Id.* Finally, the court stated that petitioner had not shown how counsel's failure to prepare him to testify prejudiced the outcome as petitioner declined to testify.  *Id.*

The state court's denial of the instant claim was not an objectively unreasonable application of *Strickland*.  Petitioner did not allege what counsel should have done to prepare him to testify.  Moreover, petitioner does not state what he would have testified to at trial that would have changed the outcome of trial.  The court will deny claim 6(g).

### 8.  Failure to Object to Jury Instructions

In claim 6(h) petitioner contends that trial counsel was ineffective for failing to object to the reasonable doubt, premeditation and deliberation, and malice jury instructions.  Petitioner argues that the instructions improperly minimized the state's burden of proof.

#### a.  Reasonable Doubt Jury Instructions

The state district court instructed the jury regarding reasonable doubt as follows:

The Defendant is presumed innocent until the contrary is proved.  This presumption places upon the State the burden of proving beyond a reasonable doubt every material element of the crime charged and that the Defendant is the person who committed the offense.

A reasonable doubt is one based on reason.  It is not mere possible doubt but is such a doubt as would govern or control a person in the more weighty affairs of life.  If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt.  Doubt to be reasonable must be actual, not mere possibility or speculation.

1

2
> If you have a reasonable doubt as to the guilt of the Defendant, he is entitled to a verdict of not guilty.

3   Exhibit 44.  The Nevada Supreme Court determined that the instruction on reasonable doubt was

4   proper.  Exhibit 70 at 6-7.

5
> The Nevada Supreme Court's order was not an objectively unreasonable application

6   of federal law.  Federal courts have previously upheld the same or similar Nevada jury instructions

7   on reasonable doubt.  *See Nevius v. McDaniel*, 218 F.3d 940, 945 (9th Cir. 2000); *Ramirez v.*

8   *Hatcher*, 136 F.3d 1209, 1213-14 (9th Cir. 1998) (citing *Victor v. Nebraska*, 511 U.S. 1 (1994)).

9   Therefore it appears that the jury instruction on reasonable doubt did not improperly minimize the

10  state's burden of proof.  Trial counsel was not ineffective for failing to object to this jury instruction.

11  This portion of ground 6(h) will be denied.

12
> **b.  Premeditation and Deliberation Jury Instructions**

13
> Next petitioner contends that trial counsel failed to object to the jury instructions

14  regarding premeditation and deliberation.  The trial court instructed the jury on premeditation and

15  deliberation by stating:

16

17

18
> Premeditated Murder of the first degree is murder which is perpetrated by means of any kind of willful, deliberate, and premeditated killing.  All three elements – willfulness, deliberation, and premeditation – must be proven beyond a reasonable doubt before an accused can be convicted of premeditated first-degree murder.

19

20
> Willfulness is the intent to kill.  There need be no appreciable space of time between formation of the intent to kill and the act of killing.

21

22
> Deliberation is the process of determining upon a course of action to kill as a result of thought, including weighing the reasons for and against the action and considering the consequences of the action.

23

24

25
> A deliberate determination may be arrived at in a short period of time.  But in all cases the determination must not be formed in passion, or if formed in passion, it must be carried out after there has been time for the passion to subside and deliberation to occur.  A mere unconsidered and rash impulse is not deliberate, even though it includes the intent to kill.

26
> Premeditation is a design, a determination to kill, distinctly formed in the mind by the time of the killing.

> Premeditation need not be for a day, an hour or even a minute.  It may be as instantaneous as successive thoughts of the mind.  For if the jury believes from the evidence that the act constituting the killing has been preceded by and has been the result of premeditation, no matter how rapidly the act follows the premeditation it is premeditated.
>
> The law does not undertake to measure in units of time the length of the period during which the thought must be pondered before it can ripen into an intent to kill which is truly deliberate and premeditated.  The time will vary with different individuals and under varying circumstances.
>
> The true test is not the duration of time, but rather the extent of the reflection.  A cold, calculated judgment and decision may be arrived at in a short period of time, but a mere unconsidered and rash impulse, even though it includes an intent to kill, is not deliberation and premeditation as will fix an unlawful killing as murder of the first degree.

Exhibit 44.  The Nevada Supreme Court determined that counsel was not ineffective for failing to object to these instructions as the instructions were not improper.  Exhibit 70 at 6-7.  In finding the instructions for deliberation and premeditation proper, the court cited to *Byford v. State*, 994 P.2d 700, 714-15 (Nev. 2000).  In *Byford* the Nevada Supreme Court laid out instructions on premeditation and deliberation that would be proper.  *Id.*  The instructions given at petitioner's trial were identical to, or very similar to, the instructions established in *Byford*.

The Nevada Supreme Court's decision was not an objectively unreasonable application of federal law.  The Ninth Circuit, in *Polk v. Sandoval*, 503 F.3d 903, 906-09 (9th Cir. 2007), reversed the federal district court's denial of a petition for writ of habeas corpus where the Nevada state court had not followed *Byford* and given the new deliberation and premeditation instruction that included separate definitions for willfulness, premeditation and deliberation.  Here, as has been previously noted, the state district court did follow *Byford* and gave an instruction that did include separate definitions for willfulness, premeditation and deliberation.

The jury instructions given in the instant case do not appear to have violated clearly established United States Supreme Court precedent, as they did not relieve the state of its burden of proof with respect to the petitioner's state of mind.  *See Sandstrom v. Montana*, 442 U.S. 510 (1979); *In re Winship*, 397 U.S. 358 (1970).  Trial counsel was not ineffective for failing to object to the instructions on deliberation and premeditation, as the instructions given were correct.  The court will

17

1   deny this portion of claim 6(h).

2   **c. Malice Jury Instructions**

3        Petitioner next argues that trial counsel was ineffective for failing to object to the jury

4   instructions relating to malice.   Petitioner contends that the jury instruction given was ambiguous.

5   The district court instructed the jury on malice as follows:

6        Malice aforethought means the intentional doing of a wrongful act without
       legal cause or excuse or what the law considers adequate provocation.  The
7        condition of mind described as malice aforethought may arise, not alone
       from anger, hatred, revenge or from particular ill will, spite or grudge
8        toward the person killed, but may result from any unjustifiable or unlawful
       motive or purpose to injure another, which proceeds from a heart fatally
9        bent on mischief or with reckless disregard of consequences and social
       duty.  Malice aforethought does not imply deliberation or the lapse of any
10       considerable time between the malicious intention to injure another and
       the actual execution of the intent but denotes rather an unlawful purpose
11       and design in contradistinction to accident and mischance.

12       Express malice is that deliberate intention unlawfully to take away the life
       of a fellow creature, which is manifested by external circumstances
13       capable of proof.

14       Malice may be implied when no considerable provocation appears, or
       when all the circumstances of the killing show an abandoned and
15       malignant heart.

16   Exhibit 44.

17        The Nevada Supreme Court found the above jury instruction was proper pursuant to

18   NRS 200.020.  Exhibit 70 at 6-7.   The Nevada Supreme Court has found similar instructions on

19   malice to be proper in *Cordova v. State*, 6 P.3d 481 (Nev. 2000).  In *Cordova* the court stated that

20   district courts may instruct juries that malice "may be implied" or that malice "shall be implied."  *Id.*

21   at 483.  Moreover, in *Guy v. State*, 889 P.2d 578, 582-83 (Nev. 1992), the Nevada Supreme Court

22   upheld similar instructions, finding the instructions accurately define malice and distinguish between

23   express and implied malice.

24        The Nevada Supreme Court's determination was not an objectively unreasonable

25   application of federal law.  Trial counsel was not ineffective for failing to object to jury instructions

26   that were proper, and thus the court did not unreasonably apply *Strickland*.  The court will deny this

1   portion of claim 6(h).

2   **9. Failure to Object to Prosecutorial Misconduct**

3   In claim 6(i) petitioner argues that trial counsel was ineffective for failing to object to

4   nine improper statements made by the prosecutor during closing remarks.

5   Statements made by the prosecution during closing argument are improper when they

6   infect "the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*

7   *v. Wainwright*, 477 U.S. 168, 181 (1986).  However, attorneys are given wide latitude during closing

8   arguments. *Fields v. Brown*, 431 F.3d 1186, 1206 (9th Cir. 2005).  Furthermore, questionable

9   remarks can be cured by jury instructions. *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995).

10  The Nevada Supreme Court affirmed the denial of this claim, stating that after

11  carefully reviewing the prosecutor's comments, the comments did not amount to prosecutorial

12  misconduct.  Exhibit 70 at 4.  The court further noted that even if trial counsel should have objected

13  to portions of the state's closing argument, petitioner did not show that the failure to object

14  prejudiced the outcome of trial. *Id.*

15  The Nevada Supreme Court's factual finding is entitled to a presumption of

16  correctness.  28 U.S.C. § 2254(e)(1).  When read in context, the statements petitioner complains

17  about do not appear to have infected the whole trial with fundamental unfairness.  Moreover, the trial

18  court noted that the closing remarks were not evidence, and that the jury was to consider the

19  evidence produced at trial. Furthermore, the trial court properly instructed the jury. Exhibit 41.  As to

20  his claim of ineffective assistance of trial counsel, petitioner has met neither *Strickland* prong, as

21  reasonable defense counsel is not required to make objections lacking merit, and petitioner has not

22  demonstrated prejudice.  The Nevada Supreme Court's ruling was not contrary to, or an

23  unreasonable application of, clearly established federal law, as determined by the Supreme Court of

24  the United States, and that ruling was not based on an unreasonable determination of facts in light of

25  the evidence.  28 U.S.C. § 2254(d).

26  The court will deny claim 6(i).

19

**10.  Failure to Maintain a Working Relationship with Petitioner**

In claim 6(j) petitioner alleges that trial counsel was ineffective for failing to maintain a working relationship with the petitioner, which prevented counsel from adequately representing the petitioner.

The Nevada Supreme Court affirmed the denial of this claim, finding that the petitioner failed to provide support for this claim.  Exhibit 70 at 7.  The court concluded that the petitioner did not demonstrate that counsel was ineffective.  *Id*.  The Nevada Supreme Court's order was not an objectively unreasonable application of *Strickland*.  Petitioner failed to show, in his state habeas corpus petition, that trial counsel was ineffective for allegedly failing to maintain a working relationship with him.  Moreover, while petitioner is entitled to effective assistance of counsel, the Sixth Amendment does not guarantee a meaningful relationship with counsel.  *Morris v. Slappy*, 481 U.S. 1, 13-14 (1983).  The court will deny this claim.

**G.  Ground Seven**

In his seventh claim for relief petitioner alleges numerous instances of ineffective assistance of appellate counsel.  Specifically petitioner contends that appellate counsel was ineffective for failing to raise on appeal: (1) improper reasonable doubt, premeditation and deliberation and malice jury instructions; (2) that juror Hanley was biased; and (3) that the prosecutor committed misconduct during closing arguments.  Moreover, petitioner contends that appellate counsel was ineffective for failing to federalize the issues that were raised on direct appeal in order to preserve the issues for federal habeas corpus review.

"Claims of ineffective assistance of appellate counsel are reviewed according to the standard announced in *Strickland*."  *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002).  A petitioner must show that counsel unreasonably failed to discover nonfrivolous issues and there was a reasonable probability that but for counsel's failures, he would have prevailed on his appeal.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

The Nevada Supreme Court determined that subclaims (1), (2) and (3) were without merit, as the

1    court had found that the jury instructions were not improper, that juror Hanley was not biased, and

2    that the comments by the prosecutor did not amount to prosecutorial misconduct.  Exhibit 70 at 11.

3    The court stated that appellate counsel was not ineffective for failing to raise those issues on appeal.

4    The Nevada Supreme Court did not unreasonably apply federal law in determining that the first three

5    subclaims were without merit. As was noted above, trial counsel was likely not ineffective for failing

6    to object to the instant subclaims during trial as the claims were without merit.  Therefore, appellate

7    counsel would not be considered ineffective for failing to raise meritless issues on appeal. *Wildman*

8    *v. Jackson*, 261 F.3d 832, 840 (9th Cir. 2001).

9           The Nevada Supreme Court also affirmed the denial of the remainder of this claim,

10   stating that petitioner failed to demonstrate that the results of his direct appeal would have been

11   different had counsel federalized the issues.  Exhibit 70 at 12.  The court's determination was not an

12   objectively unreasonable application of *Smith* and *Strickland*.  Petitioner has failed to show that had

13   counsel raised the claims on direct appeal as federal issues that the outcome of the appeal would

14   have been different.  The court will deny habeas relief with respect to this claim.

15          **H.  Ground Eight**

16          In ground eight petitioner alleges that the court should grant relief based upon the

17   doctrine of cumulative errors.  The cumulative error doctrine recognizes that the cumulative effect of

18   several errors may prejudice a defendant to the extent that his conviction must be overturned.  *See*

19   *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir.1996).  The cumulative error doctrine,

20   however, does *not* permit the Court to consider the cumulative effect of *non-errors*.  *See Fuller v.*

21   *Roe*, 182 F.3d 699, 704 (9th Cir. 1999), *overruled on other grounds*, *Slack v. McDaniel*, 529 U.S.

22   473 (2000) ("where there is no single constitutional error existing, nothing can accumulate to the

23   level of a constitutional violation").  As the Nevada Supreme Court found, petitioner's claims are

24   without merit, therefore he has failed to demonstrate any cumulative error.  This claim fails.

25   **V.  Certificate of Appealability**

26          In order to proceed with an appeal from this court, petitioner must receive a certificate

21

1    of appealability.  28 U.S.C. § 2253(c)(1).  Generally, a petitioner must make "a substantial showing

2    of the denial of a constitutional right" to warrant a certificate of appealability.  *Id.*  The Supreme

3    Court has held that a petitioner "must demonstrate that reasonable jurists would find the district

4    court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S.

5    473, 484 (2000).

6            The Supreme Court further illuminated the standard for issuance of a certificate of

7    appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  The Court stated in that case:

8            We do not require petitioner to prove, before the issuance of a COA, that
        some jurists would grant the petition for habeas corpus.  Indeed, a claim
9            can be debatable even though every jurist of reason might agree, after the
        COA has been granted and the case has received full consideration, that
10           petitioner will not prevail. As we stated in *Slack*, "[w]here a district court
        has rejected the constitutional claims on the merits, the showing required
11           to satisfy § 2253(c) is straightforward: The petitioner must demonstrate
        that reasonable jurists would find the district court's assessment of the
12           constitutional claims debatable or wrong."

13   *Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).

14           The court has considered the issues raised by petitioner, with respect to whether they

15   satisfy the standard for issuance of a certificate of appeal, and the court determines that none meet

16   that standard.  Accordingly, the court will deny petitioner a certificate of appealability.

17           **IT IS THEREFORE ORDERED** that the first amended petition for a writ of habeas

18   corpus (docket #21) is **DENIED**.

19           **IT IS FURTHER ORDERED** that the clerk shall **ENTER JUDGMENT**

20   **ACCORDINGLY.**

21           **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

22   **APPEALABILITY**.

23           DATED:  July 24, 2008

24

25           _____

26           UNITED STATES DISTRICT JUDGE